CLARK *v.* PATTERSON.

4-3652

Opinion delivered January 14, 1935.

*Joseph Callaway* and *Danaher & Danaher,* for appellant.

*J. H. Lookadoo,* for appellee.

HUMPHREYS, J. Appellee brought suit against appellant in the circuit court of Clark County to recover damages for an injury to his left eye while engaged in the performance of his duties as an employee of appellant in his lumber yard in Arkadelphia. He alleged that appellant furnished him an unsafe place to work by neg-

ligently leaving a small pile of trash on the floor of the room he had to enter to get a crate of windows to deliver to a customer, and that, in lifting the crate from the top of the stack to the floor in the usual way, it came in contact with a nail in the trash pile and caused same to fly up and stick in his left eye.

Appellant filed an answer denying the alleged act of negligence and pleading, as an affirmative defense, contributory negligence on the part of appellee and assumption of the risk by appellee as a necessary incident to his employment.

The cause was submitted to the jury upon the pleadings, testimony adduced, and instructions of the court, which resulted in a verdict and consequent judgment for $5,000 in favor of appellee, from which is this appeal.

When the regular panel of jurors were being examined upon their *voir dire* preparatory to trying the case, the court interrogated A. C. Nowlin, a member of the panel, touching his qualifications whereupon he answered in the presence of the panel that his son represented the liability insurance company involved in the case. Counsel for appellant moved the court to withdraw the case from the jury and to impanel another jury to try it. The other jurors were requested to retire, and in their absence Nowlin stated under oath that neither appellant nor any one for him had requested him to make the statement he had made. The court then offered to instruct the jury when impaneled not to consider or attach any weight to Nowlin's statement if counsel desired him to do so, but they refused to do so, stating that the court might do as he pleased relative thereto. The court paid no further attention to the incident and overruled the motion to impanel another jury, to which action on the part of the court appellant's counsel objected and excepted.

During the progress of the trial, counsel for appellant asked appellee, who was testifying, whether he (the attorney) had not told him (appellee) that the other side had offered to employ him, in explanation of why he could not take his case after having talked to him about it. Appellee answered as follows:

"You called me over the 'phone several days after that and asked me to come down to your office—asked me if I could. I told you 'Yes, sir,' and I went down to your office and you told me that you didn't want me to feel hard of you, but the insurance company had offered to give you a position as attorney for them in the case, and you wanted to know if I would feel hard of you if you took the position, after I had talked to you, if I would feel you was trying to undermine me."

At this juncture counsel for appellant moved the court to withdraw the case from the jury, because in answering the question appellee referred to the existence of liability insurance carried by appellant. The court overruled the motion over the objection and exception of counsel for appellant, but, in doing so, told the jury in positive and no uncertain language not to consider the reference to the liability insurance carried by appellant by appellee on his cross-examination in the course of the trial.

The reference to liability insurance by Nowlin occurred on his *voir dire* examination relative to his qualification as a juror and cannot be regarded as prejudicial. It was incidentally and inadvertently mentioned and not inspired by either appellant or appellee, and the court offered to instruct the jury not to consider it if appellant wanted him to do so. Appellant did not request the court to instruct the jury relative thereto. It is only when such information is elicited for the purpose of prejudicing the jury that such action has been declared prejudicial error. *Smith Arkansas Traveler Company* v. *Simmons,* 181 Ark. 1024, 28 S. W. (2d) 1052.

The reference to liability insurance by appellee was elicited by appellant's counsel on cross-examination, and, if error, was clearly invited. The court eliminated the incident from the consideration of the jury by instructing them that they must not consider it or be influenced by it as it had no place in the case. To say the least of it, the invited error was cured by the instruction.

The facts in the case, briefly stated, in their most favorable light to appellee, are as follows:

Appellee had been working for appellant in his lumber yard at Arkadelphia for about nine years, receiving orders and delivering them to the local trade. Appellant spent a part of his time at the yard, but the general manager of the business was J. B. Hardiman. It was the custom to have the buildings cleaned up the first thing in the morning. Appellee was the first one to arrive, usually getting there about 6:30 A. M., and on the morning he received his injury he arrived at his usual time. He took an order for a bill of goods consisting of lumber, nails, windows, etc., from a local concern and went about filling the order and loading it on the truck. He entered a long room, seventy-five feet long and poorly lighted, perhaps unlocking the doors himself, where such materials were kept, and took out the materials to fill the order. He got a crate of windows from the front end of the room, perhaps twenty feet back. After loading the truck, he delivered the materials, but found the windows were not the right size, so he took them back to the yard to exchange them. In changing them, it was necessary to go to the back part of the room where the needed ones were stacked. In doing so, he took it for granted that the room had been cleaned during his absence as he did not return until about nine o'clock. The room, however, had not been swept out on that morning. He did not observe any trash on the floor and took the crate of windows down in the usual way and let the crate down to the floor, where it struck a trash pile, and, as he was bending over the crate, a nail flew up from the trash pile and stuck in his eye. He extracted the nail and, after washing his eye, went back and found that the crate had struck a small pile of pieces of crating that had nails in them. The injury resulted in a partial loss of his sight and also a severe shock to his nervous system, which renders him partially unfit to work.

At the conclusion of the testimony appellant requested the court to instruct a verdict for him, which the court refused to do over his objection and exception.

Appellant contends that the court committed reversible error in refusing to do so for the following reasons:

(a).  Because, under his own testimony, the appellee is bound to have known, or was charged with the knowledge, that the place had not been cleaned up that morning.

(b).  Because there was no testimony to the effect that the nail came from the trash on the floor.

(c).  Because, if there was any negligence, it was that of Patterson or his fellow-servant.

(a).  It is argued that because appellee was the first to enter the room and perhaps the one who unlocked the doors, he must have known that the room had not been swept out or cleaned and that it was his duty to look out for trash and loose crating in getting out materials to fill the order.  This argument would be sound if he had received his injury at that time, but he was not injured for two or two and one-half hours thereafter and not until he had returned from making the first delivery.  As it was the custom to sweep out the room and clean up the first thing every morning, appellee had a right to presume that it had been done during his absence, or, at least, he could not be charged as a matter of law with the knowledge that it had not been done.

(b).  It is argued that the nail may not have come from the trash pile, and that it is mere conjecture that it did, and the suggestion is made that it may have come out of the crate of windows he was lifting down.  There is no evidence tending to show that it came out of the crate or from any other place than out of the trash pile when part of the crate struck the trash.  Under the evidence, it would be a mere guess that it came from some other place.  There is evidence to support the finding that it came from the trash pile and none to support a finding that it came from some other place.  It would therefore be conjectural indeed to say that it came from any other place.

(c).  It is argued that if there was any negligence, it was that of appellee or that of a fellow-servant.  There is no evidence in the record tending to show that appellee was guilty of any negligence.  He was performing his duty in the usual and customary and correct way.  It was not his duty to sweep out the room or keep it clean.  It is true that, at the special request of the manager, he had

swept out the room as many as a dozen times in his nine years of employment, but it was not one of his duties in the regular course of his employment. The law imposes the duty upon the employer to exercise ordinary care to furnish a safe place for his employee to work, and this duty cannot be delegated to a third party.

Appellant also argues that appellee assumed this risk as an incident to his employment. The law is that an employee does not assume the risk of negligence of an employer unless such risk is obvious and patent. *Ozan Graysonia Lumber Co.* v. *Bryant*, 90 Ark. 223, 119 S. W. 73. The room in which appellee was working was not very light. It was a long room lighted by only two small windows toward the top of the walls, and such light as was admitted by the front doors when open. Appellee did not notice that appellant had failed to sweep the room out on the particular morning in accordance with custom, and it cannot be said that the danger created by the negligence of the master was so obvious and patent that an employee in the exercise of ordinary care for his own safety must have seen it.

Appellant also contends for a reversal of the judgment on the ground that the verdict is excessive. Appellee had a life expectancy of 18.09 years, and before his injury earned $50 a month. His earning power was materially impaired on account of the injury and shock to his nerves. His injury is permanent. He suffered intense pain and still suffers considerable pain at all times. Considering the elements of damages together, we cannot say that the amount of the verdict is excessive.

No error appearing, the judgment is affirmed.